UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRY MASON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:09CV1822 FRB |
| ) | |
| STATE FARM MUTUAL AUTOMOBILE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. #12). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Terry Mason, a Missouri resident, is the mother of decedent Cory Landa, who died in August 2004 following a motor vehicle accident on Missouri Highway 39 involving a vehicle driven by Robert M. Morris in which Cory was a passenger ("the Morris vehicle"). In her Petition, plaintiff alleges that an unknown vehicle ("the phantom vehicle") negligently pulled out from a side road onto Highway 39 and into the path of the Morris vehicle, thereby causing Morris to swerve, lose control of his vehicle, and leave the roadway. Plaintiff alleges that the phantom vehicle left the scene, and that neither the vehicle nor its driver can be identified. Plaintiff brought this wrongful death action in the

Circuit Court of the City of St. Louis, Missouri, pursuant to Mo. Rev. Stat. § 537.080, claiming that she is entitled to recover damages for Cory's death under the uninsured motorist coverage provided by policies of insurance issued by defendant State Farm Mutual Automobile Insurance Company ("State Farm"), due to the negligent acts of the phantom vehicle. State Farm is a citizen of the State of Illinois. On November 5, 2009, defendant State Farm removed the matter to this Court invoking this Court's diversity jurisdiction inasmuch as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. §§ 1332, 1441.

Defendant State Farm now moves for summary judgment, arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Specifically, defendant contends that plaintiff is unable to provide substantial evidence demonstrating that the driver of the phantom vehicle acted negligently, and that therefore plaintiff cannot prevail on her claim for uninsured motorist coverage in this action. Plaintiff has responded to the motion to which defendant has replied. Both parties have also filed sur-replies to the motion.

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v.</u>

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. Id. The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. Celotex, 477 U.S. at 324. To oppose summary judgment successfully, the plaintiff "must show that admissible evidence will be available at trial to establish a genuine issue of material fact." Churchill Bus. Credit, Inc. v. Pacific Mut. Door Co., 49 F.3d 1334, 1337 (8th Cir. 1995).

## I. Background

On August 8, 2004, siblings Cory and Kasey Landa were passengers in a vehicle operated by Robert M. Morris on Missouri Highway 39 near Greenfield, Missouri. Cory was seated in the right front passenger seat of the vehicle; Kasey was seated in the rear passenger seat of the vehicle. At approximately 10:00 p.m., the Morris vehicle, traveling southbound on Highway 39, approached an area of the highway which intersected a side road, County Road 125(E), to the right. The Morris vehicle lost control near this

intersection, left the roadway, and overturned. The occupants of the Morris vehicle were ejected. Robert Morris and Cory Landa died at the scene. Kasey Landa was injured and was subsequently hospitalized. Subsequent investigation of the accident showed the Morris vehicle to have slid to its left and off of the highway. No physical evidence was found demonstrating that another vehicle was involved in the accident.

Corporal Shane Monk, who investigated the accident and completed an accident reconstruction report, opined that the Morris vehicle was traveling at a rate of speed which was too fast to maneuver the curve located at the relevant point on Highway 39, and lost control on account of it. (Monk Depo. at 9, 35-36.) Francis Oldham, who investigated the accident at plaintiff's request, opined that the loss of control was not caused by excessive speed, but rather by the driver turning the steering wheel sharply to the left. Mr. Oldham further opined that various causes could have made the driver act in this manner, including another vehicle or "a deer or a dog or a fox running across the road or some internal distraction[.] [T]here's just — there's no way of knowing." (Oldham Depo. at 10, 14-16, 27.)

At her deposition on February 17, 2006, Kasey Landa testified that immediately prior to the accident, she saw a car's headlights through the windshield of the Morris vehicle and heard either Robert or Cory exclaim "Oh shit." Kasey testified that the

Morris vehicle then swerved to the left, traveled across the other lane, and ran off of the road. At various points in her deposition, Kasey testified that the other car's headlights were located in the other lane on the highway and were not in the lane occupied by the Morris vehicle. (Landa Depo. at 44-48, 81.) Kasey testified that she did not recall having the belief that the oncoming car was going to swerve into the lane in which the Morris vehicle was traveling, but rather thought that the car was "just going on their way." (Id. at 44-48.) Kasey also testified, however, that although she saw the phantom vehicle's headlights in the other lane on the highway, the vehicle could have been making a left turn from the highway to go onto the side road or could have come from the side road, but that she did not know. (Id. at 81-83.) Kasey finally testified, "I can't really say exactly where this car was. I just saw the lights and heard the boys. And I wasn't sure where the car was coming from or anything." (Id. at 84.)

At her deposition on February 17, 2006, plaintiff's mother, Peggy Mason, testified that while undergoing rehabilitation, Kasey talked to her about the accident and said that all she remembered was seeing headlights coming from the side road and hearing somebody in the front say something. Ms. Mason testified that that was all Kasey remembered, and that Kasey did not provide any other details to her about the accident. (Mason

Depo. at 14-15.)

In an affidavit dated May 24, 2006, Kasey Landa attested, in relevant part, as follows:

> I was a passenger in a vehicle operated by Robert M. Morris. My brother, Cory Landa, was also a passenger in the vehicle. We were traveling on Highway 39 towards Mt. Vernon when I saw headlights from a vehicle ahead of us on the right side pulling out onto Highway 39. Robert said something and swerved to the left.

(Landa Affid. at para. 3.)

## II. Discussion

In its Motion for Summary Judgment, defendant argues that plaintiff cannot provide substantial evidence demonstrating that the driver of the phantom vehicle acted negligently to cause the Morris vehicle to lose control, and that therefore plaintiff cannot recover uninsured motorist coverage under the relevant policies of insurance. In response, plaintiff relies on Kasey Landa's affidavit to argue that the phantom vehicle's act of pulling onto Highway 39 from County Road 125 and into the path of the oncoming Morris vehicle was unreasonable and unsafe and constituted negligence. In its reply brief, defendant argues that Kasey Landa's affidavit should be stricken inasmuch as it contradicts her deposition testimony and attempts to create a sham issue of fact to preclude summary judgment. Because the extent to which the Court considers the challenged affidavit may necessarily impact the

- 6 -

determination of defendant's Motion for Summary Judgment, the Court turns first to defendant's request to strike Kasey Landa's affidavit.

Kasey's deposition took place on February 17, 2006. At her deposition, Kasey testified that she saw oncoming headlights through the windshield of the Morris vehicle, heard an exclamation from either Robert or Cory, and then that the Morris vehicle swerved to the left. Although Kasey testified that the oncoming headlights were in the other lane, she also testified that she did not know exactly where the other car was located; and that although it was possible that the car could have been turning left from Highway 39 onto County Road 125 or was turning from County Road 125 onto Highway 39, she in fact did not know. Indeed, Kasey was asked specifically if she knew "if that vehicle came from that side road," to which Kasey responded, "No, I don't know." (Landa Depo. at 81-82.) The following exchange then took place:

> Q. Okay. But based upon what you saw that night and you just saw the headlights, could you really tell where on the roadway that car was?
>
> A. Not really. I mean, I can't really say exactly where this car was. I just saw the lights and I heard the boys. And I wasn't sure where the car was coming from or anything.

(Id. at 83-84.)

In Kasey's affidavit submitted in support of plaintiff's

opposition to defendant's Motion for Summary Judgment, Kasey attests without equivocation that she saw headlights pulling out from the right side and onto Highway 39 at which time Robert said something and swerved. Kasey attested to the statements in this affidavit on May 24, 2006. Defendant argues that Kasey's affidavit should be stricken to the extent it contradicts the testimony given at her deposition, and specifically, that she observed the unknown vehicle pull onto Highway 39 from the right side ahead of the Morris vehicle. Defendant contends that this contradictory attestation cannot be used to create a genuine issue of material fact to avoid summary judgment.

"[C]ontradictory affidavits will preclude summary judgment only if the prior testimony reflects confusion on the part of the witness and the affidavits explain why the earlier testimony is in conflict with the affidavits." RSBA Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) (citing Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361 (8th Cir. 1983)). A review of Kasey's prior deposition testimony in conjunction with her subsequent affidavit shows contradictions between the two, but without explanation therefor in the affidavit or evidence of confusion in the deposition.

Kasey demonstrated no confusion during her deposition testimony. Kasey testified quite clearly that she did not know the exact location of the unknown vehicle when she saw the headlights

through the windshield or when Robert swerved to the left. Kasey likewise was unequivocal in her response to counsels' questions that she did not know whether the unknown vehicle was turning off of the highway, was turning onto the highway or, as she stated, was "just going on their way." In her subsequent affidavit, Kasey is precise in her recitation that she observed the unknown vehicle pulling out from the right side and onto Highway 39 ahead of the oncoming Morris vehicle. The affidavit does not explain, however, why she provided conflicting testimony at her deposition that she in fact had no knowledge of these details.

In her sur-reply brief, plaintiff argues that the statement in Kasey's affidavit that she saw headlights come from the side road was not inconsistent with her deposition testimony inasmuch as she testified therein that the headlights *could* have come from the side road. Plaintiff also argues that Kasey understandably gave equivocal responses during her deposition inasmuch as she was sixteen years of age at the time of the accident, tragically lost her brother and boyfriend as a result of the accident, and was questioned by three attorneys during the deposition. Plaintiff also contends that Kasey's affidavit is consistent with Peggy Mason's deposition testimony that Kasey told her during rehabilitation that she saw the car come from the side road. Plaintiff argues, therefore, that given the affidavit's consistency with Peggy Mason's testimony regarding Kasey's prior

statements, as well as Kasey's own deposition testimony that the headlights *could* have come from the side road, the statement in the affidavit is not so diametrically opposed to Kasey's deposition testimony such that the affidavit attestation should be disregarded.

A review of Kasey's deposition shows Kasey to have been given ample opportunity to provide specific information relating to her observation of the headlights through the windshield of the Morris vehicle and to have repeatedly testified that she did not know exactly where the headlights were located in relation to the highway and that various scenarios were possible regarding the phantom vehicle's location. Counsels' questions to Kasey regarding the location of the other vehicle were neither misleading nor confusing, nor were they placed in a context not relevant to the specific inquiry. Cf. Baker v. Silver Oak Senior Living Mgmt. Co., L.C., 581 F.3d 684, 690-91 (8th Cir. 2009) (attestations in affidavit regarding retaliation did not contradict deposition testimony where testimony was given in response to questions posed within the context of seeking information on a separate claim for relief, i.e., unlawful termination on account of claimant's age). Where specific details are provided in an affidavit on a matter about which the affiant previously testified that she had no specific knowledge, and no evidence of prior confusion is shown or explanation given for the inconsistency, such details cannot create

a genuine issue of material fact to preclude summary judgment. Maze v. Regions Bank, Inc., 265 F.R.D. 465, 470-71 (E.D. Mo. 2009).

Upon review of Kasey's deposition testimony and her subsequent affidavit, the undersigned finds the relevant statements in Kasey's deposition and affidavit to be plainly inconsistent. Because there appears to be no confusion in the deposition, nor any explanation provided for the affidavit's inconsistency, that portion of the affidavit in which Kasey states, "We were traveling on Highway 39 towards Mt. Vernon *when I saw headlights from a vehicle ahead of us on the right side pulling out onto Highway 39*," will not be considered, in itself, to create a genuine issue of material fact to avoid summary judgment. Schiernbeck v. Davis, 143 F.3d 434, 438-39 (8th Cir. 1998); Plymouth Foam Prods., Inc. v. City of Becker, Minn., 120 F.3d 153, 155 n.3 (8th Cir. 1997); Maze, 265 F.R.D. at 471.

Nevertheless, even without consideration of Kasey's affidavit, there exist genuine issues of material fact as to whether and to what extent the phantom vehicle acted in a negligent manner to cause the Morris vehicle to lose control on Highway 39.

To recover under an uninsured motorist policy, the insured has the burden of proving (1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of damages. Kesterson v. Wallut, 157 S.W.3d 675, 685 (Mo. Ct. App. 2004). The other motorist's legal

liability to the insured refers to the fault, i.e., causal negligence, on the part of the uninsured motorist. Reese v. Preferred Risk Mut. Ins. Co., 457 S.W.2d 205, 208 (Mo. Ct. App. 1970); see also Amato v. State Farm Mut. Auto Ins. Co., 213 S.W.3d 202, 207 (Mo. Ct. App. 2007). As such, for plaintiff to prevail on her uninsured motorist claim against State Farm, she must prove causal negligence or fault on the part of the phantom vehicle. Bell v. United Parcel Servs., 724 S.W.2d 682, 684 (Mo. Ct. App. 1987); Oates v. Safeco Ins. Co. of Am., 583 S.W.2d 713, 716 (Mo. banc 1979); Kesterson, 157 S.W.3d at 686.

In its Motion for Summary Judgment, defendant argues that plaintiff cannot provide substantial evidence to support her claim that the phantom vehicle's negligence caused the Morris accident, and that to proceed on plaintiff's claim on the evidence submitted would require the Court to "imagine the existence of evidence when none exists or supply the missing evidence by springing inferences where there is nothing upon which to predicate them." (Deft.'s Memo. in Support of Mot., at p. 4.)

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the non-moving party. Anderson, 477 U.S. at

248. "In performing the genuineness inquiry, trial courts should believe the evidence of the party opposing summary judgment and justifiable inferences should be drawn in that party's favor." Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 272 (8th Cir. 1992) (citing Anderson, 477 U.S. at 255). "A court is not 'to weigh the evidence and determine the truth of the matter but [instead should] determine whether there is a genuine issue for trial.'" Id. (quoting Anderson, 477 U.S. at 249). "[T]rial courts should act with great caution and may deny summary judgment when it believes 'the better course is to proceed with a full trial.'" Id. (quoting Anderson, 477 U.S. at 255). To avoid summary judgment, the plaintiff need not provide direct proof that a genuine issue of fact exists for trial. However, the facts and circumstances that she relies upon "must attain the dignity of substantial evidence and not be such as merely to create a suspicion." Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003) (internal quotation marks and citation omitted); see also Davison v. City of Minneapolis, Minn., 490 F.3d 648, 666 (8th Cir. 2007).

Upon review of the defendant's motion and the materials and briefs submitted in support of each party's position, the undersigned finds there to be genuine issues of material fact in dispute between the parties. Viewing the evidence presently before the Court in a light most favorable to plaintiff and drawing all reasonable inferences in plaintiff's favor, there is substantial

evidence demonstrating that the Morris vehicle made a sudden swerve to the left in response to negligent action taken by the phantom vehicle. From Mr. Oldham's testimony, there is evidence from which a reasonable inference can be made that the movement of the Morris vehicle was not caused by excessive speed but rather by evasive action taken by the driver, Robert Morris. From Kasey Landa's testimony that she saw headlights through the windshield of the Morris vehicle immediately prior to the accident, there is evidence that another vehicle was present on the roadway at the time the Morris vehicle made its sudden move to the left. From Kasey's testimony that she heard a sudden exclamation from one of the persons in the front seat at the time she saw the headlights, a reasonable inference can be made that the other vehicle acted in a way to surprise or alarm the front-seat declarant. From Kasey's testimony that the Morris vehicle suddenly swerved to the left upon this excited utterance, a reasonable inference can be made that the driver, Robert Morris, engaged in evasive action to avoid what he perceived to be a danger created by the other vehicle. The simultaneous nature of Kasey's observation of the headlights, the excited utterance from a person in the front seat, and the sudden swerve to the left combine to create a genuine issue of material fact as to whether and to what extent any action on the part of the phantom vehicle caused the Morris vehicle to leave the roadway. Generally, causation is a jury question. See Baker v. Eckelkamp,

760 S.W.2d 178, 178 (Mo. Ct. App. 1988).

Accordingly, on the information before the Court, and viewing all facts and inferences in the light most favorable to the non-moving party, Matsushita, 475 U.S. at 587, it cannot be said that defendant has established its right to judgment with such clarity as to leave room for no controversy and that plaintiff is not entitled to prevail under any discernable circumstances. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). Defendant's Motion for Summary Judgment should therefore be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. #12) is denied.

*/s/ Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this _19th_ day of July, 2010.